Inrae Farina, Daniela M. Farina, appellant, appearing pro se, Ryan A. Withans, appearing for Appley, Janina M. Hoskins, Chapter 7 trustee. Okay, Ms. Farina, can you hear me? I think you're still muted. You may need to press, I think it's star six, is that right, Madam Clerk, star six? That's correct. Try hitting star six. Hello, Your Honor, can you hear me? I can now, yes, good, good, thank you. Okay, Ms. Farina, we're going to give you a total of 20 minutes to argue for these three appeals. If you'd like, you could save part of that 20 minutes to speak after Mr. Withans. Do you want to reserve part of your 20 minutes for rebuttal? Yes, Your Honor, five minutes, please. Five minutes, okay, please go ahead. Do I start right at this point? Yes, please do. Okay, great. Okay. Hello, bankruptcy appellate panel. My name is Daniela Farina, and I'm the debtor in the bankruptcy case today. I'm representing myself in these three appeals. I would just like to start off by spending a few minutes on the background of this case to give you context on how we came here today. I came to the bankruptcy court for release of $124,000 debt to one person, Victor Allum, who was my ex-boyfriend. He had received a default judgment, and it was pending appeal. And at one point in time, we had purchased two homes together over in Napa County. When I filed bankruptcy, I filed bankruptcy believing it was a Chapter 13, but it was a Chapter 7. Mr. Allum, when the bankruptcy was filed, Mr. Allum entered it into a compromise with the trustee to pay Cape of any of my lower court cases in exchange for him giving up his one-half alleged share of the house that was at issue in the lower court back to sell to the estate. He had no right to do that as he had signed over his portion of the share, and that's what we were disputing in the lower court over in the Superior Court of Napa prior to this bankruptcy case. As a result, any of my pending cases in the Superior Court that were under appeal were all dismissed by the trustee, including a default judgment on the $124,000 that I was presently appealing that he had received. And then when the bankruptcy case first started, he filed a vexatious litigant case against me and didn't tell me about the hearing, and he received another default judgment, which after I found out about it, I went to go appeal again, but it was too late because the trustee had dismissed it and dismissed my appeal. I have a visual disability which limits my ability to see items up close. The bankruptcy court for Northern California, specifically Judge Jifrensky, the presiding judge in this case, does not recognize or accommodate to those that are disabled. This was a big problem for me because when I started this bankruptcy case, so much was going on. I requested accommodation to participate in hearings, but I couldn't because I couldn't work all this visual equipment that was going on, and a majority of the hearings I was locked out. I was told by the bankruptcy court that they do not recognize ADA, and therefore, many of the hearings I couldn't even participate in. For example, I filed a motion to refuse Judge Jifrensky and ask for another judge who would allow an ADA accommodation in their court. I had to prepare the motion myself using a speech writing program which converts my words to text on paper. It does not always convert my words accurately. There are times that it mistakes just like Surrey does when you're speaking out on your phone. I guess the program wrote that there had been a prior relationship with Judge Jifrensky and myself when my intention was to say there was a prior relationship with my ex-boyfriend in a section of the motion. I apologized for the mistake in open court, however, my non-intentional mistake became the object of a fixation for Judge Jifrensky to call me names during the hearing and in open court tell everyone that she's a liar. He would yell out in open court that there was never a relationship between us. In short, the trustee made sure to take advantage of the situation by filing for default judgments and summary judgments without showing any evidence but pure allegations. Over the last year, Judge Jifrensky denied every motion I had ever filed and granted, every motion the trustee filed he granted on their behalf. As a result, I've been forced to appeal numerous bankruptcy orders as I have been denied access to the courts and have been denied a hearing by an impartial judge. My first appeal is the Homestead Exemption, which is the NC22-1232. Trustee has failed to satisfy a four-part test for avoidance of the liens from Alpha Lyons and Nicolosi. First, the liens that issue do not impair the claim's exemption. Second, liens that issue are not judicial liens or another type of lien specified by statute. Finally, the alleged Nicolosi deed of trust and Alpha Lyons endeavored encumbrances are void as a matter of law. Since they are void, no transfer of property occurs. Moreover, the trustee failed to demonstrate that Alpha Lyons and Nicolosi liens should be considered as voluntary transfer of property. From the definition, it's clear that a lien is a hold against a property, not a transfer. Accordingly, appellate exemption applies. Therefore, the bankruptcy court is basically granted the motion of summary judgment. Further, the property in question was my primary residence, unlike the trustee argued. I was prevented from presenting evidence for a hearing on this topic. I had nine because they got the summary judgment. I had nine witnesses who were going to appear to testify just a week later to testify that I lived in the house and was forced to leave my house in March of 22. In addition, I had the PG&E, Comcast, and Garbage. They were all in my name at this point in time. And I never got a chance to present that evidence. I did not have my day in court to prove that I lived in the house. Instead, allegations of no furnishings or surveillance videos that were never submitted into evidence, but purely just alluded to, were the basis of claiming that I did not live in the house. I would hope that the trustee would have at least provided some proof of no furnishings that they would place into evidence. Instead, what he did was he took pictures of when the house was first purchased and staged by the real estate agent and put that into evidence compared to what the house looked like in March of 2022 and said, nobody lives here. Besides the flood that happened in October and the trustee moving all my property and Mr. Allum, who moved out of the house, it really left my house barren, but it didn't mean that I did not live there. Second one is denial of discharge, NC 22-1233. The trustee has not shown that the debtor or myself willingly or intentionally refused to pay the order. Trustee does not provide any evidence demonstrating that I illegally took possession of the property. Moreover, the declaration states that the sheriff refused to remove the debtor and my father from the property claiming that he could not find any justification that the  This fact demonstrates that alleged possession of property by myself event it took place was not willful since the sheriff stated that he did not have a basis for removal of debtor from the property. I did not have any willful or intentional intent. Therefore, the trustee failed to establish all elements of Section 727-A-6. The bankruptcy court erred in granting the trustee's motion for summary judgment on 727-A-6-A claims. The court granted the trustee's motion for summary judgment to deny my discharge. The court took my house and took all my furnishings, my photos of my kids and my mother, and they want to hurt me further by denying my discharge as the trustee and her legal team have accumulated over $500,000 in legal fees during this case. It's been a true David and Goliath. The last one is the civil contempt, which is NC 22-1235. This is the third one, appeal. First, the trustee is non-immune for two. An absolute quasi-judicial immunity will be extended to non-judicial officers only if they perform official duties that are functionally comparable to those of judges, for example, duties that involve the exercise of discretion in resolving disputes. The present action arises from Ms. Hayes and the trustee Hoskins' actions related to the waiver of liability. In this case, the trustee, I brought a contempt of court against the trustee because the trustee took all my possessions out of the house after the judge said that she could not force me to sign a waiver of liability, but she wouldn't release my items even after the judge issued that order, and she had all my possessions thrown at the Sonoma dump, including those literal memories of my children, my personal belongings, my clothing, and my furnishing. It was clear that such actions of the trustees are not official duties that are functionally comparable to those of judges. Accordingly, the quasi-judicial immunity does not apply to the trustee in the present case. Accordingly, the quasi-judicial immunity does not apply to the trustee in this case. I demonstrate all elements of the contempt. Civil contempt consists of a party's disobedience of a specific indefinite court order by failing to take all reasonable steps within the party's power to comply. And the court entered a lawful order for judgment of possession and writ of assistance. The language of the order merely refers to the First Avenue property as the subject of the judgment of possession in no manner that a prudent person can affirm that it included all the furnishings, personal belongings, including pictures of my young children when they were babies and photos of my deceased mother, who died in October during the pending of this bankruptcy, and other effects found in the property solely owned by myself. The removal of said furnishings, personal belongings, and other effects belongs to me with an exercise of discretion on the part of the trustee by unilaterally enlarging the coverage of the order issued by the bankruptcy court, taking all my personal belongings and dumping them at the Sonoma dump. The trustee took a simple bankruptcy case of $124,000 in debt that was based on a default judgment and currently being appealed and racked up over $500,000 in legal fees and trustee costs in a little over a year. I had no chance to ever present my side of the case and have my day in court due to not being able to access hearings and not being afforded a fair trial in front of a fair judge. If I did, I would have been able to show the overwhelming evidence to show this court that the property in question was my primary residence and that the trustee violated a court order when she took all my worldly possessions that I have left in this world and threw them away at the Sonoma dump in violation of a court order. Thank you very much. Okay, thank you very much. Any questions from the panel at this point? Okay, great. So you have about seven and a half minutes for rebuttal after Mr. Whithans speaks. Mr. Whithans, please go ahead. Good morning, Your Honors. This is Ryan Whithans for the trustee, Anina M. Hoskins. I think that the debtor's contentions are fully addressed in the trustee's appellate briefs. I do just want to make a few quick notes. The debtor began with a detailed explanation of her motivations for filing this bankruptcy case. I would note that in one of her earlier appeals, she vehemently argued that she did not file this bankruptcy case, and instead the case was filed due to fraud or mistake of an alleged individual named Justin Facti. I think that the issues on appeal did not hinge upon the debtor's reasons for filing, the debtor's asserted disability to which the bankruptcy court, and this court as well, have provided adequate accommodations. The debtor's arguments on appeal involved unsupported allegations of favoritism or judicial bias. There have been at least three bankruptcy judges that have been involved in this case. There are not facts to show that any of them demonstrated any favoritism or bias. And they've not granted all of the trustee's motions. The debtor has had more than sufficient opportunity to present her case, and she failed to convince the bankruptcy court of the validity of her arguments. The truth of the matter is the uncontroverted evidence that was before the bankruptcy court, and is part of the record on appeal, provides sufficient grounds to affirm each one of the challenge orders. I want to be mindful of this court's time, so instead of reciting a prepared statement, I would just simply ask if your honors have any questions. I'd be happy to spend my time answering them. Otherwise, the trustee will rest on the papers. Thank you. Any questions from the panel? Okay. Thank you very much. Thank you, Your Honor. We'll go back to Ms. Farina. You have seven and a half minutes, give or take, to rebut what Mr. Whitham said. You don't have to use all that time if you don't want to, but you have up to that amount of time. So if you would please unmute yourself again by dialing star six, you can go ahead. Hello, Bankruptcy Appellate Panel again. Thank you. Okay, I have seven minutes. So I want to respond to the trustee's attorney's allegations that he just made. First of all, he has not brought up, once again, he does not dispute that he has not provided any evidence that I was not living in the house. It's simply just their statement to take over the house so that they could actually sell it. And it becomes the property of the state. And I understand that the trustee is able to make a lot more money on a $1.4 million house that she sells off than anything else. Regarding the fraud that happened at the beginning of this case, there was fraud. And I worked with the police diligently. I had paid someone to assist me with my case. And unfortunately, it was someone I met online and I got scammed into something. I was able to eventually hire a new attorney. And he tried his best to help me out based on the conditions that we were presented. He had said that he had never seen a case like this with so much animosity between a judge. And then the other allegation that there was no bias by any other judge. I didn't say there was any bias by all three judges. And I don't know who the third judge is. It was just Frensky and Lafferty. And I didn't say anything about Lafferty. I was just talking about a Frensky only having that personal bias after what I had written by accident because of my disability. But this case hinges on a trustee who has spent over $500,000 in taking money from my estate when the estate didn't even have that much in debt. And if the appeal had moved forward, I was just looking to restructure my debt. That was it. But if the appeal had moved forward within the appellate courts, I actually got one appeal ruled in my favor when we were in the bankruptcy court. And I tried bringing it back over to the superior court regarding the breach of contract that brought us here in the very first place. But what it was was them spending, the trustee and his attorney spending half a million dollars, if not more, that I know of. And then Mr. Allen, who's an attorney himself, has spent $250,000. I spent $10,000 on this case. And that's because our economics are not equivalent. And I did not have the money to keep up with all their filings and things like that. And I'm not saying that they're at fault, but they really took advantage of the situation. We not, especially at the beginning where I was locked out of hearings. The appellate court was, I emailed you guys and you guys sent me a link so I could call in. It was very simple. And I thought this would be the same kind of way that I could participate in the hearings in the lower court. I mean, in the bankruptcy court, but I was not able to do that. They just kept telling me they don't basically refer to ADA or they don't have ADA in the bankruptcy court for Northern California. And I was kind of surprised. So I want to ask if you guys have any questions for me. And I apologize if I rambled. I'm very nervous and I'm not an attorney. So I'll be willing to answer any questions you have of me. Okay, thank you very much. Any questions from the panel? No, I think we're okay. We've read your briefs. We've listened to your argument. We understand your position. So the matter is submitted and we'll be providing written decisions in these appeals promptly. So thank you both for your arguments today, and court is now in recess. Thank you, Your Honors. Thank you.
judges: Faris, Spraker, Corbit